*In re* GOODWIN ESTATE.

STATE DEPARTMENT OF SOCIAL WELFARE *v.* NEWMAN.

1. MORTGAGES—SECURITY FOR DEBT.

    A mortgage given to secure payment of a debt is only an incident or accessory to the principal debt.

2. SAME—REIMBURSEMENT FOR OLD-AGE ASSISTANCE.

    Action of county in taking and recording a mortgage on property of recipient of old-age assistance incident to agreement for reimbursement, effected a valid and enforceable lien that was not offensive to the statute and State's claim for like assistance was specifically denied preference over the county's claim (CL 1948, §§ 400.34a, 404.101; CLS 1956, §§ 400.26, 400.60, 400.77, 708.10).

3. COSTS—PUBLIC QUESTION—REIMBURSEMENT FOR OLD-AGE ASSISTANCE—STATE—COUNTY.

    No costs are allowed in proceedings testing respective rights of county and State for reimbursement for old-age assistance from small estate of recipient, where county had secured a mortgage on the realty, a public question being involved.

Appeal from Iosco; Dehnke (Herman), J. Submitted January 11, 1961. (Docket No. 60, Calendar No. 48,713.) Decided February 28, 1961.

In the matter of the estate of Rhoda Ann Goodwin, deceased, J. Richard Newman, administrator, petitioned to set aside a mortgage given the Iosco County Department of Social Welfare to secure repay-

REFERENCES FOR POINTS IN HEADNOTES

[1] 36 Am Jur, Mortgages § 2.
[2] 41 Am Jur, Poor and Poor Laws § 46.
[3] 14 Am Jur, Costs § 37.

ment of sums expended for medical assistance. The State of Michigan, Department of Social Welfare, seeking reimbursement for old-age assistance, answering an order to show cause, joined in prayer that mortgage be discharged. Order entered holding mortgage valid and denying petition. State of Michigan appeals. Affirmed.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistant Attorneys General, for plaintiff State of Michigan.

*Paul Harvey,* for defendant county.

SMITH, J. The case before us involves a controversy between the department of social welfare of Iosco county, Michigan, hereinafter termed the county, and the State of Michigan. It has to do with the assets of Rhoda Ann Goodwin, deceased, and their division between county and State.

Mrs. Goodwin, in her declining years, was in what is termed "unfortunate financial circumstances." For 10 years prior to her death she had received old-age assistance. In October of 1955 (she died early in January of 1959) she required hospitalization. She was admitted in a semiconscious condition and remained hospitalized for about a month. On November 30, 1955, the department of social welfare of the county took (and later recorded) a real-estate mortgage on her home, to "secure the repayment of $100, more or less, according to hospital bills."

Mrs. Goodwin's estate consisted entirely of her home, "which was of negligible worth." The State, with its claim for old-age assistance in the amount of some $8,000, has come in conflict with the county, having a claim of approximately $400. The county claims priority, relying on the lien of its mortgage.

In reply the State asserts that such lien is invalid, upon the ground that the county was not authorized to take a mortgage under these circumstances, and that, even if it could, such mortgage gives the county's claim no preference over that of the State. The trial court ruled that the mortgage was "valid and is enforceable as such."

The problem is entirely statutory and solution must be found within the statutory framework as it existed at the time of the creation of the lien. The county points in justification to a section of PA 1915, No 267, as amended, which, it argues, specifically grants to it the authority to enter into agreements for reimbursement from patients. The section upon which reliance is placed reads in part as follows:

"Said department [the county department of social welfare] shall enter into an agreement for the use and benefit of the county liable, signed by the parties benefited under this act, or a legally responsible relative, or guardian, for reimbursement of the expenses incurred by said counties in furnishing such medical care and treatment. The husband, wife, father, mother and children of any such indigent adult person, being of sufficient ability, shall be jointly and severally liable to the said county for the reimbursement of the expenses incurred by said county in furnishing such medical care and treatment; and such liability may be enforced in an action at law, in any court having jurisdiction of the parties, commenced and maintained in the name of the said county." (Bracketed material added.)[1]

The essence of the position of the county, then, is that there was a mandatory provision that it enter into an agreement for reimbursement and that, as an incident to such an agreement, it might take security. The taking of a mortgage to secure the payment of a debt is, of course, a commonplace, the

---

[1] CL 1948, § 404.101 (Stat Ann 1960 Rev § 16.281).

mortgage being mere security therefor, and only an incident or accessory to the principal debt.[2]

The State's disputation thereof is not impressive. It points to section 77 of the social welfare act[3] as a restriction on the authority to enter into such an agreement: "Agreements for the reimbursement of the county department of social welfare for relief granted to persons or families in their own homes may be required in the cases of applicants whose need for relief is based in whole or in part on inability to obtain funds, moneys, moneys which may be received, income or assets unavailable at the time of application for or grant of relief." This provision, by its own terms, is not restrictive of that quoted above. The State cites, as well, section 34a of the act,[4] which provides that its claims shall not have preference over the county's, and section 60,[5] which provides penalties for fraud in obtaining relief, and for aiding or abetting one receiving relief in disposing of his property. Neither section is applicable here. The State is asserting no preference, nor did the recipient of relief dispose of any property. At the most the parties entered into an agreement for reimbursement, secured by a mortgage. Likewise, section 26[6] has no bearing. That section prohibits the assignment or transfer of real property within 5 years immediately preceding date of application or granting of assistance "for the purpose of qualifying for old-age assistance, or for the purpose of increasing the amount of assistance to be received under this, or any prior act, or for the purpose of precluding recovery." Whatever was done did not take place in the 5-year period specified. Finally, section

---

[2] *Ginsberg* v. *Capitol City Wrecking Co.*, 300 Mich 712, 717.
[3] CLS 1956, § 400.77 (Stat Ann 1960 Rev § 16.477).
[4] CL 1948, § 400.34a (Stat Ann 1960 Rev § 16.434 [1]).
[5] CLS 1956, § 400.60 (Stat Ann 1960 Rev § 16.460).
[6] CLS 1956, § 400.26 (Stat Ann 1960 Rev § 16.426).

10 of chapter 8 of the probate code,[7] even if applicable, does not in terms cover the situation of the secured claim.

The action of the county in securing its agreement was not offensive to statute, and the lien, as the lower court held, is valid and enforceable. The order below is affirmed. No costs, a public question.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

---

[7] CLS 1956 § 708.10 (Stat Ann 1959 Cum Supp § 27.3178 [420]).